IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

KRICKETT LENDERMAN                                                                               PLAINTIFF

V.                             CASE NO. 3:14-cv-00245-JTK

CAROLYN W. COLVIN, *Acting Commissioner,*                                       DEFENDANT
Social Security Administration

## MEMORANDUM AND ORDER

Plaintiff Krickett Lenderman brings this action for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After reviewing the administrative record and the arguments of the parties, the Court finds that substantial evidence supports the Commissioner's decision.

## I.   PROCEDURAL HISTORY

Ms. Lenderman protectively filed her applications for DIB and SSI on January 11, 2012, alleging a disability onset date of July 1, 2004. (R. at 8.) She alleged complications from chronic obstructive pulmonary disease ("COPD"), bone disease, allergies, depression, and her hair falling out. (R. at 146.) The Social Security Administration denied Ms. Lenderman's claims at the initial and reconsideration levels. (R. at 8.) On June 25, 2013, an Administrative Law Judge ("ALJ") held a hearing on this matter. (R. at 25.) On August 2, 2013, the ALJ issued an unfavorable decision, denying Ms. Lenderman's claims. (R. at 5.) On September 16, 2014, the Appeals Council denied her request for review. (R. at 1.)

On October 20, 2014, Mr. Lenderman filed a complaint against the Commissioner,

appealing the ALJ's denial of DIB and SSI. (Pl.'s Compl. 1, ECF No. 2.) On December 10, 2014, the district judge reassigned the case to the Court based on the parties' consent. (Consent 1, ECF No. 6.) Both parties have submitted briefs for the Court to consider. (Pl.'s Br., ECF No. 12; Def.'s Br., ECF No. 13.)

## II.   ADMINISTRATIVE PROCEEDINGS

Ms. Lenderman was forty-one years old at the time of the administrative hearing and had graduated high school. (R. at 26.) She had an expired certified nursing assistant license. (R. at 27.) She had past relevant work as a teacher's aid, hotel housekeeper, and cafeteria attendant. (R. at 17.) The ALJ applied the five-step sequential evaluation process to Ms. Lenderman's claims.[1] (R. at 9.)  The ALJ found that Ms. Lenderman satisfied the first step because she had not engaged in substantial gainful activity. (R. at 10.) At step two, the ALJ found that Ms. Lenderman suffered from the severe medical impairment of COPD and a depressive disorder, not otherwise specified. (R. at 10.) At step three, the ALJ found that Ms. Lenderman did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 11.) Before proceeding to step four, the ALJ found that Ms. Lenderman had a residual functional capacity ("RFC") to perform light work. (R. at 13.) The ALJ found that Ms. Lenderman could not "be

---

[1]The five part test asks whether the claimant: (1) is currently employed; (2) severely impaired; (3) has an impairment or combination of impairments that meet or approximate a listed impairment; (4) can perform past relevant work; and if not, (5) can perform any other kind of work.  Through step four of this analysis, the claimant has the burden of showing that he is disabled.  Only after the analysis reaches step five does the burden shift to the Commissioner to show that there are other jobs in the economy that the claimant can perform.  *Steed v. Astrue*, 524 F.3d 872, 875 n. 3 (8th Cir. 2008).

exposed to concentrated amounts of respiratory irritants such as dusts, fumes, odors, changes in temperature or humidity." (R. at 13.) Mentally, the ALJ limited Ms. Lenderman to "unskilled work; where interpersonal contact is incidental to the work performed; complexity of the tasks is learned and performed by rote; requires little independent judgment; the supervision required is simple, direct and concrete;" and she would not have to deal with the general public. (R. at 13.) In making the RFC determination, the ALJ found that Ms. Lenderman was not credible regarding the persistence and limiting effects of her impairments' symptoms. (R. at 16.) The ALJ found at step four that Ms. Lenderman was not capable of performing her past relevant work. (R. at 16.) At step five, the ALJ determined that there were jobs available in significant numbers in the national and local economy that Ms. Lenderman could perform, such as in small products assembly or as a silver wrapper. (R. at 18.) Therefore, the ALJ found that Ms. Lenderman was not disabled. (R. at 18.)

### III.     STANDARD OF REVIEW

The Court's limited function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Cox v. Apfel*, 160 F.3d 1203, 1206-07 (8th Cir. 1998) (citing *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)). The Commissioner's decision cannot be reversed merely because substantial evidence would have supported an opposite decision.

*Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). However, "[t]he substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). "'Substantial evidence on the record as a whole' . . . requires a more scrutinizing analysis." *Id.* (quoting *Smith v. Heckler*, 735 F.2d 312, 315 (8th Cir. 1984)). "In reviewing the administrative decision, '[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

## IV.  DISCUSSION

Ms. Lenderman argues that the Commissioner's decision is not supported by substantial evidence. (Pl.'s Br. 2, ECF No. 12.) Specifically, Ms. Lenderman alleges that the ALJ's decisions at step two, step three, his RFC assessment, and his decision at step five are not supported by substantial evidence. (*Id.* at 10.)

### A.  STEP TWO

At step two, Ms. Lenderman argues substantial evidence does not support the ALJ's decision to find that her processing ability is not a severe impairment when her processing speed IQ is sixty-two. (Pl.'s Br. 3, ECF No. 12.) The Commissioner responds that Ms. Lenderman's processing speed is within the average range, and this impairment is non-severe. (Def.'s Br. 8, ECF No. 13.)

At step two, the ALJ must determine, "based on the medical evidence, whether the

claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). Proof of a disabling impairment "must be supported by at least some objective medical evidence." *Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992).

Here, substantial evidence supports the ALJ's step two determination. The only objective evidence Ms. Lenderman alleges to support her claim of a severe processing speed disorder is her processing speed IQ of sixty-two. On October 21, 2010, Dennis Vowell II, Psy.D., PA, administered Ms. Lenderman a Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV test"). (R. at 253.) On that scale, Ms. Lenderman received a processing speed score of sixty-two, which is in the fifty-fifth percentile. (R. at 253.) As her processing speed is above-average, substantial evidence supports the ALJ's determination that this is not a severe impairment.

    B.    STEP THREE

At step three, Ms. Lenderman argues that substantial evidence does not support the ALJ's determination that she did not meet Listing 12.05(C). (Pl.'s Br. 2, ECF No. 12.) The Commissioner responds that substantial evidence supports the ALJ's determination that Ms. Lenderman does not meet this listing. (Def.'s Br. 4, ECF No. 13.)

Substantial evidence supports the ALJ's step three determination. To meet listing 12.05(C), Ms. Lenderman would have to prove that she has: (1) "a valid verbal, performance,

or full scale IQ of 60[-]70; (2) an additional 'severe' impairment; and (3) evidence supporting the onset of intellectual and adaptive functioning disability before the age of twenty-two." *Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citing *Sullivan v. Zebley*, 493 U.S. 520, 530 (1990)). Ms. Lenderman claims that her processing speed of sixty-two in the WAIS-IV test satisfies the first requirement. (Pl.'s Br. 2, ECF No. 12.) However, her verbal comprehension index ("VCI") score was eighty-one, her perceptual reasoning index ("PRI") score was eighty-eight, and her full scale IQ was ninety.[2] (R. at 253.) Therefore, Ms. Lenderman did not prove that she met the first requirement of Listing 12.05(C).

    C.    THE ALJ'S RFC DETERMINATION

Ms. Lenderman challenges the ALJ's RFC determination on two grounds: substantial evidence did not support the ALJ's RFC determination because (1) he should have "included a limitation that [Ms. Lenderman] was off-task a set percentage of the day to account for [her] slowness"; and (2) the ALJ should not have discounted Ms. Lenderman's credibility. (Pl.'s Br. 5-6, ECF No. 12.)

    *1.    Ms. Lenderman's "Slowness"*

Ms. Lenderman claims that substantial evidence does not support the ALJ's RFC

---

[2] "The terms VCI and PRI should be substituted for the terms VIQ and PIQ in clinical decision-making and other situations where VIQ and PIQ were previously used." WAIS-IV Administration and Scoring Manual, at 5.

determination because it did not include a limitation addressing her "slowness." (*Id.* at 5.) Although she frames it as a step five error that the ALJ should have asked the vocational expert ("VE") about limitations regarding her "slowness," it is more appropriately addressed regarding the RFC determination. The Commissioner responds that substantial evidence supports the ALJ's determination. (Def.'s Br. 9, ECF No. 13.)

It is the claimant's burden to prove her RFC. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *See* Social Security Ruling 96-8p. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of claimant's ability to function in the workplace." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (internal citations omitted). Although an RFC is a medical determination, in making this determination the ALJ should rely not only on medical evidence but on all relevant, credible evidence. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

Here, substantial evidence supports the ALJ's RFC determination. Ms. Lenderman relies on her WAIS-IV test processing speed score of sixty-two to prove that the ALJ should have included a limitation addressing her "severely reduced processing speed." As discussed earlier, a processing speed score of sixty-two is above the national average. Additionally, Dr. Vowell stated that "the claimant displayed ability to respond adequately to basic assessment of attention and concentration capacity." (R. at 254.) Her persistence "appeared adequate

throughout the session." (R. at 254.) Finally, she "did not display remarkable psychomotor slowing. In terms of mental status type tasks, capacity to perform within a basically acceptable time frame was demonstrated." (R. at 254.) Based on Dr. Vowell's assessment, as well as the evidence from the entire record, substantial evidence supports the ALJ's RFC determination.

### 2. *Claimant's Credibility*

Ms. Lenderman argues that the ALJ's decision to discount her credibility is not supported by substantial evidence. (Pl.'s Br. 6, ECF No. 12.) She argues that the ALJ stated only "part of the fact," but when the evidence is examined as a whole, "it is clear that the activities the ALJ is opining that Mrs. Lenderman can do are being done but with considerable difficulty or to a much lesser extent than the average person is doing them." (Pl.'s Br. 7, ECF No. 12.) The Commissioner argues that substantial evidence supports the ALJ's credibility analysis. (Def.'s Br. 10, ECF No. 13.)

In considering the credibility of a claimant's subjective complaints, an ALJ must consider the claimant's prior work record and observations by third parties and treating and examining physicians relating to such matters as the following: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). However, the ALJ is "not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922,

932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). Furthermore, the Court will generally defer to the ALJ's decision to discredit the claimant's complaints if the ALJ gave good reasons for doing so. *Id.* at 932.

Review of the ALJ's decision shows that he considered the entire record. The Court will not substitute its opinion for that of the ALJ, who is in a better position to assess credibility. Here, the ALJ referred to the *Polaski* considerations and cited inconsistencies in the record to support his findings. Specifically, the ALJ considered all of the allegations from Ms. Lenderman and her daughter. (R. at 14.) Additionally, the ALJ stated that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (R. at 14.) After examining the entire record, substantial evidence supports the ALJ's determination to discount Ms. Lenderman's credibility.

D.  STEP FIVE

Ms. Lenderman argues that substantial evidence does not support the ALJ's conclusion that she can perform the job of a silver wrapper because she would have to deal with the general public. (Pl.'s Br. 10, ECF No. 12.) Testimony from a VE is substantial evidence when it is based on a correctly phrased hypothetical that accurately describes the claimant's condition. *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007). Here, the ALJ asked the VE a correctly phrased hypothetical question based on Ms. Lenderman's RFC, and the VE testified that Ms. Lenderman could perform the jobs of a silver wrapper. (R. at 17.) The VE also testified that her testimony was consistent with the Dictionary of Occupational Titles. (R. at

18.) Therefore, substantial evidence supports the ALJ's decision that Ms. Lenderman can perform the job of a silver wrapper.

Ms. Lenderman also contends that the job numbers the VE testified exist are for a group of jobs, some of which Ms. Lenderman does not qualify to perform. (Pl.'s Br. 11, ECF No. 12.) She contends that there are actually only 107,457 jobs nationally and 846 jobs in Arkansas as a silver wrapper, and only 1,427 jobs nationally and 27 jobs in Arkansas in small products assembly. (*Id.*). Ms. Lenderman argues that these number of jobs are not substantial. (*Id.*). The Commissioner argues that substantial evidence supports the ALJ's step five determination. (Def.'s Br. 13-14, ECF No. 13.)

"[T]he application of the significant numbers requirement to a particular claimant's factual situation" is a matter left "to the trial judge's common sense." *Hall v. Chater*, 109 F.3d 1255, 1295 (8th Cir. 1997). "Factors the trial judge should consider include the level of the claimant's disability, the reliability of both the claimant's and the VE's testimony, and the types and availability of work that the claimant could perform." *Id.* After carefully considering the record, including Plaintiff's education, work experience, age, and work-related limitations, the Court finds that the "significant numbers" requirement was satisfied in this case. *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (affirming the trial judge's finding that 200 jobs in Iowa constitutes a significant number); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (affirming the trial judge's finding that 30,000 jobs in the national economy and 650 jobs in the state constitute a significant number). Therefore, substantial evidence supports the ALJ's

step five determination.

## V. CONCLUSION

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record that contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record and concludes there is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error. Therefore, the final decision of the Commissioner is affirmed.

SO ORDERED this 29th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE